## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| USDIGITAL, INC., | ) | Case No. 09-10374 (CSS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JEOFFREY L. BURTCH | ) | |
| CHAPTER 7 TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-50469 |
| | ) | |
| JOSEPH HUSTON, STEVEN LINSDLEY | ) | |
| KEVIN DOMAN, CHARLES S. MCNEIL | ) | |
| MARK ZIEGLER, BRIAN HUMPHREY, | ) | |
| NEXGEN TELECOM, LLC, INFINIDI MEDIA, | ) | |
| INC., AND STONEBRIDGE MARKETING, | ) | |
| LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION[1]

**ASHBY & GEDDES, P.A.**
William P. Bowden
Gregory A. Taylor
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
     -and-
**HOLME ROBERTS & OWEN LLP**
Michael J. Hoffman
1700 Lincoln Street, Suite 4100
Denver, CO 80203

Counsel for Charles S. McNeil, Mark Ziegler,
Brian Humphrey, and NexGen Telecom, LLC.

**COOCH & TAYLOR, P.A.**
Robert W. Pedigo
The Brandywine Building
1000 West Street, 10th Floor
P.O. Box 1680
Wilmington, DE 19899-1680

Counsel for Plaintiff

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Dated:  January 5, 2011

Sontchi, J.  _____

## INTRODUCTION

Before the Court is a motion by the defendants to dismiss the adversary proceeding filed by Jeoffrey L. Burtch, Chapter 7 Trustee (the "Trustee") for USDigital, Inc. (the "Debtor" or "USDigital").  The adversary action is comprised of seventeen counts.  In Counts I-IV, the Trustee seeks recovery of transfers made by the Debtor pursuant to 11 U.S.C. §§ 547, 548 and 550 and pursuant to the Delaware Uniform Transfer Act (the "Delaware UFTA").  In Counts IX, X, XII and XIII, the Trustee asserts claims for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, corporate waste and unjust enrichment against certain directors, NexGen Telecom, LLC ("NexGen"), and Infinidi Media, Inc. ("Infinidi Media").  In Counts XIV, XV, XVI and XVII, the Trustee seeks to disallow, to equitably subordinate, and to recharacterize claims filed by certain directors, NexGen and Stonebridge Marketing, LLC ("Stonebridge").  For the reasons set forth below, the Court grants the motion to dismiss in part and denies it in part.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PROCEDURAL BACKGROUND

On March 26, 2007 (the "Petition Date"), USDigital filed a voluntary Chapter 7 petition.  Shortly thereafter, Jeoffrey L. Burtch was appointed as successor interim Chapter 7 Trustee.  The Trustee filed a complaint on March 18, 2009 (the "Complaint") (Docket No. 1), seeking to avoid prepetition transfers and alleging breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, usurping corporate opportunity, corporate waste, unjust enrichment, accounting, disallowance of claims, equitable subordination, and recharacterization against NexGen, Infinidi Media, Stonebridge, and directors[2] of USDigital, Inc (collectively, the "Defendants").  On November 12, 2009, the Defendants filed a motion to dismiss (the "Motion to Dismiss") (Docket No. 31) and, in the alternative, a motion for a more definite statement.  The Trustee filed an objection to the Motion to Dismiss on January 14, 2010 (the "Objection") (Docket No. 34), and the Defendants filed a reply brief in support of the Motion to Dismiss on February 12, 2010 (the "Reply") (Docket No. 35).  Briefing is complete and the matter is ripe for decision.

## THE PARTIES

Between 2003 and 2006, four separate, but interconnected, corporations were formed: USDigital, Inc., USDigital Television, LLC ("USDTV"), NexGen and Infinidi Media.  As described in more detail below, each of the corporations shared the same source of capital and had many of the same directors and officers.  Prior to the Debtor's

---

[2] The Directors include Charles S. McNeil, Mark Ziegler, Brian Humphrey, Kevin Doman Joseph C. Huston and Steven Lindsley.

3

bankruptcy in 2006, it entered into business transactions with each of these corporations and those transactions form the basis of the Complaint.

### USDigital

USDigital was in the business of providing internet digital bundling services to Walmart's customers in select New Mexico, Texas, Nevada and Utah markets. USDigital worked in combination with USDTV to provide a "triple play" of cable television, internet, and Voice Over Internet Protocol ("VOIP") Services.

### NexGen

NexGen provides over-the-air terrestrial digital subscription service in the mid-western area of the United States. The company was founded in 2003 and is headquartered in Draper, Utah. NexGen was formally known as U.S. Digital Television, LLC. NexGen was the cofounder and major shareholder of USDigital.

NexGen was the principle supplier of capital to USDigital. Charles S. McNeil was the chairman of NexGen. Mark Ziegler ("Ziegler") was the vice president of NexGen. Brian Humphrey ("Humphrey") served as the general counsel for NexGen.

### USDTV

USDTV was an over-the-air pay television service that operated out of Draper, Utah. USDTV was founded in 2003 and started service in Salt Lake City in 2004. In July 2006, USDTV filed a voluntary Chapter 7 petition in the United States Bankruptcy Court in the District of Delaware (the "USDTV Filing"). It ceased operating in March 2007.

USDTV and USDigital shared some of the same directors and officers. Steve Lindsley ("Lindsley") was the CEO of USDTV prior to its bankruptcy. Kevin Doman

("Doman") was an original founder of USDTV.  NexGen invested at least $9 million in USDTV.

## Infinidi Media

Infinidi Media was developed by certain of the directors and management of USDigital and NexGen in the fall of 2006 as an internal sales division of USDigital. Between January and December of 2006, USDigital invested $245,869.25 in the development of software, hardware and startup costs for Infinidi Media (the "Infinidi Media Transfers").  Infinidi was spun-off of USDigital in December 2006.

Infinidi's founders included Jospeh C. Huston ("Huston"), Doman, Lindsley, McNeil, Ziegler, Humphrey (collectively, the "Director Defendants"), and NexGen.  In November 2006, USDigital hired Alan Pollard ("Pollard") to be vice president of business development at Infinidi Media and Matthew Baros ("Baros") to be vice president of operations at Infinidi Media.  As employees of USDigital, Pollard and Baros signed non-compete and confidentiality agreements with USDigital.

## Stonebridge

Stonebridge is a limited liability company that was incorporated in 2003 in the state of Arkansas.  Huston, USDigital's founder and president, is also the managing member and majority owner of Stonebridge.  Stonebridge owns 2.1% of USD Holdings.  On August 28, 2006, USDigital borrowed $184,000 from Stonebridge, which was formalized by a promissory note agreement.

**FACTUAL BACKGROUND**

On June 13, 2006, USDTV executed a promissory note in favor of NexGen in the amount of $104,160.00 secured by set top boxes owned by USDTV (the "USDTV Secured Promissory Note"). [3]  NexGen and USDTV documented the transaction by entering into a Security Agreement (the "USDTV Security Agreement") for the set top boxes.  In addition to the NexGen Secured Promissory Note, on June 29, 2006, USDTV executed an unsecured promissory note in favor of NexGen in the amount of $104,160.00 (the "USDTV Unsecured Promissory Note").

Following the USDTV Filing in 2007, USDigital and USDTV entered into an asset purchase agreement (the "APA") for the sale of substantially all of USDTV's assets to USDigital.  The Court approved the sale motion on September 12, 2006.[4]

As part of the APA, USDigital assumed USDTV's liabilities to NexGen.  First, USDigital acquired USDTV's set top boxes and executed a Security Agreement (the "USDigital Security Agreement") and Secured Promissory Note (the "NexGen Secured Promissory Note") for the principal amount of $100,000 in favor of NexGen for the set top boxes.  Second, USDigital assumed NexGen's USDTV Unsecured Promissory Note in the amount of $100,000 (the "NexGen Unsecured Promissory Note" and collectively with the NexGen Secured Promissory Note, the "NexGen Promissory Notes").

---

[3] Set top boxes are devices that connect a television to the internet or to a digital signal.

[4] Case No. 06-10701, Docket No. 96

Separately, as part of the APA, the Debtor agreed to pay certain operating and administrative expenses of USDTV. NexGen paid certain operating expenses to the Entertainment and Sports Program Network ("ESPN") on behalf of ESPN in the amount of $44,421. On August 8, 2008, USDigital transferred $44,421 to NexGen for that debt (the "Expense Reimbursement").

On approximately September 26, 2006, NexGen perfected its security interest in the set top boxes by filing a financing statement with the Delaware Department of State. The financing statement provided that NexGen held an interest in "all of Debtor's right, title, and interest in and to Debtor's set top boxes, whether now owned or hereafter acquired, and wherever located, including all proceeds associated with the foregoing."[5]

On March 26, 2007, USDigital filed for bankruptcy. During the course of the USDigital's bankruptcy case, the set top boxes were sold for $40,953.75. On October 17, 2007, NexGen filed a proof of claim for $104,407.53 comprised of a $40,953.75 secured claim for the proceeds of set top boxes sale and a $63,453.78 unsecured claim.

## LEGAL DISCUSSION

### A. Motion to Dismiss Standard

    i.    *The Standard of Review When Evaluating Complaints Asserting Fraud.*

Complaints asserting claims for fraud must meet a heightened pleading standard. Federal Rule of Civil Procedure Rule 9(b)[6] requires these complaints to set

---

[5] UCC Financing Statement, Initial Filing Number 6331437.

[6] Federal Rule of Civil Procedure 9(b) is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7009. *See also In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr.

forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer.[7]  To provide fair notice, the complaint must go beyond merely quoting the relevant statute.[8]  The Third Circuit explained the purpose of Rule 9(b)'s particularity requirements as follows:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.[9]

A trustee is generally afforded greater liberty in pleading fraud, since he is a third-party outsider to the debtor's transactions.[10]    Nevertheless, these relaxed Rule 9(b)

---

D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud." (citations omitted)).

[7] *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005).  *See also Iqbal*, 129 S. Ct. at 1954 ("Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8.").

[8] *Avantel*, 327 B.R. at 718.  *See also Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 356 (Bankr. D. Del. 2006).

[9] *Seville Indus. Mach. Corp. v. Southernmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[10] *Global Link*, 327 B.R. at 717.  *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("This is because of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.'" (*citing Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994)).  *See also Oakwood Home*, 325 B.R. at 698.

requirements require the trustee to do more than merely identify the allegedly fraudulent transfers.[11]

      ii.    *The Standard Regarding Sufficiency of Pleadings When Evaluating a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.*

A motion under Rule 12(b)(6)[12] serves to test the sufficiency of the factual allegations in the plaintiff's complaint.[13] "Standards of pleading have been in the forefront of jurisprudence in recent years."[14] With the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*[15] and *Ashcroft v. Iqbal*,[16] "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[17]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts.[18] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"

---

[11] *Oakwood Homes*, 325 B.R. at 699 (dismissing fraudulent transfer claims where plaintiff "alleged no facts or other supporting information which would establish the fraudulent nature of [the] alleged transfers and has essentially recited only the statutory language of § 548(a) of the Code"); *Global Link*, 327 B.R. at 718 (dismissing fraudulent transfer claim where complaint failed to allege, among other things, "the value of what was received" in the transfer).

[12] Federal Rules of Civil Procedure 8(a) and 12(b)(6) are made applicable to this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012, respectively.

[13] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)).

[14] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

[15] 550 U.S. 544 (2007).

[16] 129 S. Ct. 1937 (2009).

[17] *Fowler*, 578 F.3d at 210.

[18] *See Fowler*, 578 F.3d at 210.

are insufficient to survive a motion to dismiss.[19]  Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[20]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[22] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not shown - that the pleader is entitled to relief."[23]

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part analysis.  First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard

---

[19] *Iqbal*, 129  S. Ct. at 1949.  *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citations omitted); *Bartow v. Cambridge Springs SCI*, 285 Fed. Appx. 862, 863 (3d Cir. 2008) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.); *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001)  ("Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (citations omitted)).

[20]  *Fowler*, 578 F.3d at 210 (internal quotations omitted).  *See also Iqbal*, 129 S. Ct. 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Buckley v. Merrill Lynch & Co. (In re DVI, Inc.)*, 2008 Bankr. LEXIS 2338 (Bankr. D. Del. Sept. 16, 2008) ("Rule 8(a) requires a showing rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice, but also the grounds on which the claim rests."(citations omitted)).

[21] *Iqbal*, 129 S. Ct. at 1949.

[22]  *Iqbol*, 129 S. Ct. at 1950.  "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* at 1951.

[23] *Id.* at 1950 (citations and internal quotations omitted).

any legal conclusions."[24]  The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."[25] The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[26]

## B.  Count I - Preferential Transfers.

Count I of the Complaint alleges that USDigital made two preferential transfers to NexGen: (i) a security interest in the set top boxes; and, (ii) a $44,421 payment for expense reimbursement (collectively, the "NexGen Transfers").  The Trustee seeks to avoid the NexGen transfers pursuant to 11 U.S.C. § 547(b).  Under section 547(b), in order to avoid a prepetition preferential transfer of the Debtor's interest in property, the Trustee must show that the transfer was:

(1)    to or for the benefit of a creditor;

---

[24]  *Fowler*, 578 F.3d at 210-11.  *See also Twombly*, 550 U.S. at 555 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  The Court may also consider documents attached as exhibits to the Complaint and any documents incorporated into the Complaint by reference.  *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (*citing PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "[I]f the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint." *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005).  *See also Sunquest Info. Sys., Inc. v. Dean Whitter Reynolds, Inc.*, 40 F. Supp. 2d 644, 649 (W.D.Pa. 1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls." (citations omitted)).

[25]  *Fowler*, 578 F.3d at 211 (internal quotations omitted) ("[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." (citations omitted)).  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, 2008 Bankr. LEXIS 2338, at *13 (Bankr. D. Del. Sept. 16, 2008).

[26]  *In re Ins. Brokerage Antitrust Litig.*, 2010 U.S. App. LEXIS 17107, 46-47 n. 18 (3d Cir. Aug. 16, 2010).  *See also Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010) (stating that *Twombly* and *Iqbal* require factual amplification where needed to render a claim plausible, not pleadings of specific evidence or extra facts beyond what is needed to make a claims plausible).

(2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3)    made while the debtor was insolvent;

(4)    made-

    (A)    on or within 90 days before the date of the filing of the petition;…

(5)    that enables such creditor to receive more than such creditor would receive if-

    (A)    the case were a case under chapter 7 of this title;

    (B)    the transfer had not been made; and

    (C)    such creditor received payment of such debt to the extent provided by the provisions of this title.[27]

"Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b)."[28]  The Trustee maintains that it has met its burden and satisfied the requirements of section 547(b).  The Trustee has alleged that the NexGen Transfers were transfers of an interest of the Debtor in property, for the benefit of NexGen, and that NexGen was a creditor of the Debtor at the time of the NexGen Transfers.  The Trustee further alleges that the NexGen Transfers were on account of an antecedent debt owed by the Debtor before the transfers were made, that the Debtor was insolvent at the time of the transfers, and that the transfers were made on or within ninety days before the Petition Date or between ninety days and one year before the date of filing of the petition, if such creditor at the time of such transfer was an insider.

---

[27] 11 U.S.C. § 547(b).

[28] *In re CVEO Corp.*, 327 B.R. 724, 728 (Bankr. D. Del. 2005) (quoting *In re M Group, Inc.*, 308 B.R. 697, 700 (Bankr. D. Del. 2004)).

When the Debtor incurred the debt to NexGen is at issue.  The antecedent debt requirement of section 547(b)(2) has been met if the Debtor agreed to assume the NexGen security interest prior to its transfer.  On the other hand, if the transfer occurred at the same time as the assumption of the debt, no antecedent debt existed, and the Trustee fails to show the elements of a preferential transfer.

The Bankruptcy Code defines "debt" as "liability on a claim."[29]   A debt is antecedent if it was incurred prior to the allegedly preferential transfer.[30]  "Although the term 'antecedent debt' is not defined by the Bankruptcy Code, a debt is 'antecedent' when the debtor becomes legally bound to pay before the transfer is made."[31]

The Trustee asserts that the transfers were on account of antecedent debts because USDigital transferred the NexGen Security Interest after it had agreed to assume NexGen's security interest in the set top boxes, which occurred either on July 28, 2006, the date NexGen and USDigital executed the term sheet or, alternatively, on August 19, 2006, the date NexGen and USDigital executed the APA.[32]  NexGen argues that the Trustee has not plausibly alleged that the transfer was on account of an antecedent debt because the security interest was transferred on the same date that the security agreement was entered into, the date the Bankruptcy Court approved the APA,

---

[29] *See* 11. U.S.C. § 101(12); *In re Armstrong*, 291 F. 3d 517, 522 (8th Cir. 2002).

[30] *In re Bridge Info. Sys, Inc.*, 474 F.3d 1063, 1067 (8th Cir. 2007).

[31] *In re CVEO Corp.*, 327 B.R. at 728 (quoting *In re Fonda Group, Inc.*, 108 B.R. 956, 959 (Bankr. D.N.J. 1989)).

[32] There is no factual dispute: both parties agree that a term sheet and an APA were executed by NexGen and USdigital, which was later approved by the Court.

September 12, 2006.  In addition, that was the first date USDigital was legally obligated to assume the security interests.

The Trustee has failed to assert a facially plausible claim.  Specifically, the Trustee has failed to show that the transfer of the security interest occurred on account of an antecedent debt.  The security interest was transferred when the security agreement was executed (the same day the APA was executed) or on the day the court approved the asset sale.  Either way, USDigital incurred the debt and the transfer was made on the same day.  In addition, the Debtor only became legally obligated for assumption of NexGen's security interest in the set top boxes on one of two dates: (1) July 28, 2006, the day the APA was executed; or (2) August 19, 2006, the day the Court approved the asset sale.  Prior to those dates, USDigital was not legally obligated on the set top boxes subject to NexGen's lien because USDigital did not yet possess the set top boxes.  Rather, USDTV or its estate was obligated to NexGen for the set top boxes.  Accordingly, the granting of the security interest in the set top boxes by the Debtor to NexGen was not "for or on account of an antecedent debt owed by the debtor before such transfer was made."

The Trustee also seeks to recover as a preference the $44,421 payment for expense reimbursement made by USDigital to NexGen on August 8, 2006.  In support of its allegation, the Trustee asserts that the term sheet entered into on July 28, 2006, provides that USDigital agreed to pay certain operating and administrative expenses of USDTV, and that the term sheet obligated USDigital to repay NexGen for the debt incurred by USDTV.  Specifically, NexGen argues that the payment was made for an

antecedent debt owed by the Debtor because the term sheet did not create a legal obligation for the debtor to pay anything to NexGen.  In support, NexGen points to page 3 of the term sheet, which provides that unless the Debtor later opts to buy USDTV's assets, the Debtor would not "have any obligation to the Trustee or the Company…other than the bridge financing above."[33]  NexGen further argues that the legal obligation to pay NexGen on behalf of USDTV for the Expense Reimbursement, if in fact there was a legal obligation, would have occurred at the same time that USDigital legally acquired USDTV's assets, i.e., September 12, 2006.

At issue, once again, is when USDigital incurred the debt to NexGen.  The Expense Reimbursement was made to NexGen on August 8, 2006, ten days after the Debtor signed the term sheet in which it agreed to pay certain operating expenses of USDTV, including the Expense Reimbursement.

Term sheets do not bind parties; rather, they merely outline the material terms and conditions of a business agreement.  The only document that conceivably bound USDigital was the APA, which was executed on September 12, 2006, after the Expense Reimbursement transfer was made.  Therefore, USDigital was not indebted to NexGen prior to the execution of the APA and the transfer was not "for or on account of an antecedent debt owed by the debtor before such transfer was made."

---

[33] Reply, P. 4

### *C.* Count II, III & IV – Avoidance and Recovery of Constructive Fraudulent Transfers.

The Trustee seeks in Counts II, III & IV of the Complaint to recover from NexGen constructive fraudulent transfers under 11 U.S.C. §§ 548, 544 and 550 and the Delaware Uniform Transfer Act §§ 1301 *et seq.* Section 544 of the Bankruptcy Code permits the Trustee to rely on Delaware fraudulent transfer law in recovering assets for the estate.[34] The Delaware UFTA essentially tracks Bankruptcy Code section 548(a)(1)(B).   To establish a constructively fraudulent transfer under Delaware law and section 548(a)(1)(B) of the Bankruptcy Code, the plaintiff must show that (1) the debtor made the transfer without receiving reasonably equivalent value, and (2) the debtor was either: a) insolvent or became insolvent as a result of the transfer; b) engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.[35]

Courts in this district have held that Rule 8(a) governs constructive fraud claims.[36]   Complaints alleging constructive fraudulent transfers "need only set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made

---

[34] Section 544(b) provides "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable under section 502(e) of this title."

[35] 6 Del. C. § 1304(a)(2) and 1305(a); *See In re Hechinger Inc. Co. of Del.*, 327 B.R. 537, 552 (D. Del. 2005); *China Resource Prods. (U.S.A.) v. Fayda Int'l, Inc.*, 856 F. Supp. 856, 863 (D. Del. 1994); *In re MDIP, Inc.*, 332 B.R. 129, 132 (Bankr.D. Del. 2005).

[36] *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 495 n.5 (Bankr. D. Del. 2010) (citing cases).

against him."[37]  "All that is needed at this stage is an allegation that there was a transfer

for less than reasonably equivalent value at a time when the Debtors were insolvent."[38]

The term "reasonably equivalent value" is not defined by the Bankruptcy Code.

Congress left to the courts the task of setting forth the scope and meaning of this term,

and courts have rejected the application of any fixed mathematical formula to

determine reasonable equivalence.[39]  As the Third Circuit has noted, "a party receives

reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"[40]

Rather, courts look to the "totality of the circumstances" of the transfer to determine

whether "reasonably equivalent" value was give.[41]

In Counts II, III & IV, the Trustee alleges that the Security Interest Transfer and

the $44,421 Expense Reimbursement Transfer were constructively fraudulent.  NexGen

counters that the Trustee failed to allege that the Debtor did not receive reasonably

equivalent value in exchange for the transfers.

With regard to the NexGen Security Interest Transfer, the Trustee asserts that no

additional value was provided by NexGen to USDigital in exchange for the NexGen

Security Interest Transfer.  The Trustee apparently views the purchase and sale of the

---

[37] *Mervyn's*, 426 B.R. at 495 (quoting *In re AstroPower Liquidating Trust*, 335 B.R. 309, 333) (Bankr. D. Del. 2005).

[38] *In re DVI, Inc.*, 2008 WL 4239120, at *9 (Bankr. D. Del. 2008).

[39] *Peltz v. Hatten*, 279 B.R. 710, 736 (D. Del. 2002).

[40] *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (citing *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 213 (3d Cir. 2006)).

[41] *In re Fedders North America Inc.*, 405 B.R. 527, 547 (Bankr. D. Del. 2009).

set top boxes out of USDTV's bankruptcy as a separate transaction from the Debtor granting the security interest to NexGen.

NexGen argues in response that the Debtor purchased the set top boxes subject to a $100,000 lien in favor of NexGen as part of the Debtor's purchase of substantially all of USDTV's assets out of the USDTV bankruptcy and that in order to acquire the set top boxes, USDigital would either need to pay off NexGen's lien, or purchase the boxes subject to the lien.  Specifically, NexGen argues that "[a]llowing the $100,000 debt to be assumed by USDigital and remain outstanding provided more than reasonably equivalent value to USDigital with respect to the set top boxes."[42]

The Trustee has failed to set out sufficient factual matter to show that the claim is facially plausible.  Conclusory or bare-bones allegations no longer suffice to survive a motion to dismiss.[43]  Here, the Trustee fails to provide any factual allegations supporting the assertion that USDigital did not receive reasonably equivalent value for the secured interest in the set top boxes.  Indeed, no such allegation can be made as the NexGen Security Interest Transfer was part and parcel of the purchase of assets, which provided for the assumption of $100,000 in debt.  In addition, the Trustee has failed to provide any support to the factual allegations that USDigital was insolvent or was rendered insolvent at the time it purchased USDTV's assets out of bankruptcy.

---

[42] Motion to Dismiss, P. 11

[43] *Fowler* 578 F.3d at 210.

The Trustee also argues that the $44,421 Expense Reimbursement transfer to NexGen was constructively fraudulent.   NexGen argues in response that reasonably equivalent value was given in exchange for the Expense Reimbursement and, thus, the transfer was not constructively fraudulent.   NexGen further argues that the amount paid to NexGen by the Debtor would have been cured if it had not been paid and for support points to section 9.3 of the APA, entitled "Cure Payments," which provides that for the purpose of curing arrearages owed by USDTV, the Debtor shall pay "up to Six Hundred Thousand Dollars ($600,000) at the Closing Date, (*less $44,421 which the Debtor[44] previously paid to ESPN, Inc. directly*), to be used to make cure payments to counterparties requiring payment as of the Closing Date"(emphasis added).[45]   NexGen explains that a "direct dollar-for-dollar $44,421 reduction in the debtor's liability on the closing date is exactly equivalent consideration for the $44,421 reimbursement to NexGen."[46]

Again, the Trustee fails to allege facts that demonstrate he has a plausible claim for relief.   The Trustee merely pleads that the payment did not result in the return of any reasonably equivalent value to the Debtor.   The Trustee fails to assert in its Complaint any factual allegations supporting that contention.   Rather, as part of the APA, payment of the Expense Reimbursement decreased the Debtor's liability to NexGen in the exact amount of the Expense Reimbursement.   Because "threadbare"

---

[44] Both parties agree that NexGen paid the $44,421 to ESPN although the APA provides that the Debtor paid it.

[45] Reply, P. 10

[46] Reply, P. 10-11

assertions do not suffice to state the ground on which these claims rest, the Court grants the Motion to Dismiss.[47]   The claims under section 550 in Count IV fail because the transfers at issue are unavoidable.

### D. Counts IX, X & XII – Claims of Breach of Fiduciary Duty Against the Director Defendants, Aiding and Abetting, and Corporate Waste.

In Count IX, the Trustee alleges that the Director Defendants breached their fiduciary duties of care, loyalty, and good faith owed to the Debtor and its creditors. Specifically, the Trustee alleges that the Director Defendants breached their duty of care by failing to supervise and monitor the financial affairs of the Debtor and breached their duty of loyalty by causing the Debtor to use its operating funds for the start-up costs of Infinidi Media.  The Trustee also alleges that the Defendants failed to oversee and to protect the Debtor's resources by allowing Infinidi Media to remove intellectual property of the Debtor.  In response, the Director Defendants assert that Count IX is subject to dismissal because Infinidi Media was an internal sales division and, thus, any funds contributed to its development were expenditures and not transfers.   The Director Defendants also argue that even if the Trustee's factual allegations indicate transfers occurred, the Trustee failed to plead sufficient facts to support its claim for breach of fiduciary duty.  Lastly, the Director Defendants argue that any claims based on a breach of the duty of care should be dismissed because USDigital eliminated the personal liability of its directors by including a provision in its bylaws eliminating director liability to the fullest extent under applicable law.

---

[47] *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).

i.    *The Governing Law*

A fundamental premise for the imposition of fiduciary duties is a separation of legal control from beneficial ownership.[48]    Principles of equity act to protect beneficiaries who are not able to protect themselves.  *Id.*  One of the underlying tenets of Delaware corporate law provides for a separation of control and ownership.[49]  The legal responsibility of managing the business of a corporation for the benefit of its shareholders rests with the board of directors.[50]  Accordingly, the Delaware Supreme Court has long recognized that fiduciary duties are imposed on directors and officers of a Delaware corporation.[51]

The duty of care has been described as the duty to act on an informed basis.[52]  To prove a breach of the duty of care, a plaintiff must demonstrate gross negligence.[53]  The precise behavior constituting gross negligence varies depending on the context, but in general "a trial court will not find a board to have breached its duty of care unless the directors individually and the board collectively have failed to inform themselves fully and in a deliberate manner."[54]

---

[48] *McMahon v. New Castle Associates*, 532 A.2d 601, 604 (Del. Ch. 1987).

[49] *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1988).

[50] 8 Del. C. § 141(a).

[51] *Malone*, 722 A.2d at 10; *Mills Acquisition v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1988); *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939).

[52] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

[53] *Fedders N. Am., Inc.*, 405 B.R. at 539 (citing *Cargill, Inc. v. JWH Special Circumstance*, LLC, 959 A.2d 1096, 1113 (Del. Ch. 2008)).

[54] *Cede*, 634 A.2d at 368.

"The duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[55]  To prove a breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred and that the transaction was unfair to the shareholders.[56]

The duty of good faith is a "subsidiary element" of the "fundamental duty of loyalty."[57]  The Delaware Supreme Court has recognized three non-exclusive categories of conduct indicative of a failure to act in good faith.  First, a failure to act in good faith may be established when a director "intentionally acts with a purpose other than that of advancing the best interests of the corporation."[58]  Second, a failure to act in good faith may be established when a director "acts with the intent to violate applicable positive law."[59]  Third, a failure to act in good faith may be established when a director "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."[60]  The Court, however, noted that the categories are not the only examples of a failure to act in good faith.[61]

> ii.  *Directors Owe Fiduciary Duties to Creditors When a Delaware Corporation Becomes Insolvent.*

---

[55] *Cede*, 634 A.2d at 361.

[56] *Joyce v. Cuccia*, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997).

[57] *Guttman v. Huang*, 823 A.2d 492, 506 n. 34 (Del. Ch. 2003).

[58] *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 67 (Del. 2006).

[59] *Id.*

[60] *Id.*

[61] *Id.*

The general rule is that directors and officers do not owe a fiduciary duty to creditors beyond the relevant contractual terms.[62]  Creditors are presumed to be able to protect themselves through the contractual agreements governing their relationships with firms.[63]  In addition to contractual protections, the law of fraudulent conveyance also exists to protect creditors.[64]  Delaware corporate law expects that corporate directors of a solvent firm will cause the firm to undertake business activities for the benefit of the residual risk-bearers, the owners of the firm's equity capital.[65]  Therefore, generally, creditors must look to the firm itself for payment, rather than its directors or stockholders, except in instances of fraud or other grounds exist to disregard the corporate form.[66]

In Delaware, when a corporation has become insolvent, however, fiduciary duties inure to the benefit of creditors.[67]  Once a company has become insolvent its creditors become the risk bearers of the corporate director's decisions.[68]  Chancellor Allen writing for the Delaware Court of Chancery in *Credit Lyonnais Bank Nederland, N.V. v. Pathe Comm. Corp.*, stated that directors in the context of high risk and

---

[62] *See, e.g., Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. Ch. 1992) (finding that directors do not owe creditors duties beyond the relevant contractual terms); *Katz v. Oak Indus.*, 508 A.2d 873 (Del. Ch. 1986) ("the terms of the contractual relationship agreed to and not broad concepts such as fairness define the corporation's obligations to its bondholders").

[63] *Production Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 787 (Del. Ch. 2004).

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Geyer*, 621 A.2d at 787.

[68] *Production Res. Group, L.L.C. v. NCT Group, Inc.* 863 A.2d 772, 794 n. 16 (Del. Ch. 2004).

uncertainty had an obligation to maintain their fiduciary duties to "the community of interest that sustained the corporation…"[69]   This language was thought by some to expose directors to a new set of fiduciary duty claims brought by creditors.[70]   To the extent that a firm operated in the "zone of insolvency," some read *Credit Lyonnais* as authorizing creditors to challenge directors' business judgments as breaches of fiduciary duties owed to them.[71]

In *National American Catholic Educational Programming Foundation Inc. v. Gheewalla*, the Delaware Supreme Court addressed the issue of whether a corporate director owes fiduciary duties to the creditor of a corporation that is insolvent or "in the zone of insolvency."[72]   In *Gheewalla*, the Court concluded that creditors may not assert direct claims for breach of fiduciary duty against directors of a solvent or insolvent corporation.[73]   *Gheewalla* provides, in dicta, that creditors of an insolvent corporation have standing to assert derivative claims on behalf of the corporation for breach of fiduciary duty. [74]   In addition, the Court ruled that the directors of a solvent Delaware corporation that is operating in the zone of insolvency must continue to discharge their

---

[69] *Credit Lyonnais Bank Nederland, N.V. v. Pathe Comm. Corp.* 1991 WL 277613, at *34 (Del. Ch. Dec. 30, 1991).

[70] *Production Res. Group*, 863 A.2d at 789.

[71] *See Production Res. Group* 863 A.2d at 789 n.54 (citing sources).

[72] *National American Catholic Educational Programming Foundation Inc. v. Gheewalla*, 930 A.2d 92 (2007).

[73] *Gheewalla*, 930 A.2d at 103

[74] *Gheewalla*, 930 A.2d at 101.  The Supreme Court stated it in dicta because the plaintiff in that case did not raise a derivative claim in the Court of Chancery or on appeal.

fiduciary duties to the corporation and its shareholders, not its creditors.[75]  Accordingly, after *Gheewalla*, the actual point of insolvency becomes integral to assessing the director's duty to creditors.

The Trustee asserts (and it is uncontested by the Defendants) that USDigital was insolvent at the time of the Infinidi Media Transfers.  USDigital's insolvency made the creditors the principal constituency susceptible to injury by any fiduciary breaches diminishing the firm's value.

 *iii.*  *Standing for Claims against Directors of a Delaware Corporation in Bankruptcy.*

As a threshold matter, the corporate misfeasance and malfeasance alleged in Count IX are of a type generally brought in derivative suits.[76]  Typically, in a derivative suit shareholders are required to first make a demand on the board of directors for corrective action or demonstrate that demand would be futile. [77]  However, in the context of a chapter 7 proceeding, the trustee is the sole representative of the estate with the authority to sue and be sued.[78]  The Trustee represents the debtor corporation, USDigital, and, therefore, there is no requirement to make a demand prior to initiating suit against the Director Defendants.  Accordingly, the Trustee has standing to bring Counts IX, X and XII.

---

[75] *Gheewalla*, 930 A.2d at 101.

[76] A derivative suit is brought on behalf of the corporation by a stockholder. Black's Law Dictionary at 475 (8th ed. 2004).

[77] *Continuing Creditor's Committee of Star Telecommunications, Inc. v. Edgecomb,* 385 F.Supp.2d 449, 457 n.5 (D. Del. 2004) ("In a derivative suit the shareholder bringing the suit must either make a demand on the company's board of directors that it undertake corrective action or demonstrate that a demand should be excused because it would be futile.").

[78] *See* 11 U.S.C. § 323

      *iv.     The Duty of Care and the Exculpatory Provision in USDigital's Corporate Bylaws.*

Litigation involving the duty of care is uncommon since the adoption of section 102(b)(7) of the Delaware General Corporate Law permitting a Delaware corporation to have a provision in its corporate bylaws exculpating its directors from monetary liability for a breach of duty of care by the corporation or its shareholders.[79]  Indeed, courts have found that a trustee is precluded from bringing a claim of breach of the duty of care against directors in a Delaware corporation when the corporation has an exculpatory provision in its certificate of incorporation.[80]

The Director Defendants move to dismiss any claim based on breach of a duty of care because the exculpatory provision in the bylaws of USDigital limits the liability of directors to the fullest extent of the law.   Exculpatory provisions insulate directors from duty of care violations and money damages.[81]  "Duty of care violations are actionable only if the directors acted with gross negligence."[82]  In Delaware, gross negligence has

---

[79] *See* Del. Code. Ann. Tit. 8. § 102(b)(7).

[80] *Pereira v. Farace*, 413 F.3d 330, 341 (2d Cir. 2005) (holding exculpatory provision in Delaware corporation's charter precludes bankruptcy trustee from bringing action against directors for breach of duty of care); *Continuing Creditor's Committee of Star Telecommunications., Inc.*, 385 F. Supp.2d at 463 (holding exculpatory clause applied to prevent creditors as well as shareholders from bringing duty of care claims); *Production Resources Group*, 863 A.2d 798-99 ("[I]nsofar as the complaint explicitly attempts to state a due care claim against the defendant-directors for mismanagement and inadequate oversight, the exculpatory provision bars it").

[81] *In re Walt Disney Co., Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

[82] *Id.*

been defined as a "'reckless indifference to or deliberate disregard of the whole body of stockholders' or actions which are 'without the bounds of reason.'"[83]

The exculpatory provision in USDigital's bylaws releases the Director Defendants from claims alleging a breach of the duty of care and that the Trustee fails to allege gross negligence.  The Trustee fails to show that the Director Defendants acted on an uninformed basis or that their behavior approached "reckless indifference" or a "deliberate disregard."  Therefore, the claims alleging breach of the duty of care are dismissed without leave to amend.   The exculpatory provisions do not, however, insulate directors from claims for breach of the duty of loyalty or for failure to act in good faith.

   v.     *The Duty of Loyalty and Good Faith Owed to USDigital and its Creditors*

The Trustee alleges that the Director Defendants breached their duty of loyalty by permitting USDigital to invest time and capital in an internal sales division, Infinidi Media, which it later spun-off to be its own corporation.  The Trustee's breach of loyalty claims are threefold: (1) the Director Defendants were enmeshed in conflicts of interests when permitting time and capital to be spent on developing Infinidi Media; (2) failure to oversee and protect USDigital's assets by permitting USDigital to invest resources in Infinidi Media and by allowing Infinidi Media to remove intellectual property from

---

[83] *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del Ch. Apr. 5, 1990) (quoting *Allaun c. Consol Oil Co.*, 147 A. 257, 261 (Del. Ch. 1929)).

USDigital; and, (3) the Director Defendants breached their duty of good faith by approaching the Infinidi Media transfers with a level of indifference and egregiousness.

The duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholder and not shared by stockholders generally."[84]    Generally, Delaware law requires a plaintiff to establish that: (1) a self-interested transaction occurred and (2) the transaction was unfair to the plaintiffs.[85]  "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders."[86]    However, a breach of the duty of loyalty may be premised upon the failure to act in good faith as well.

The Delaware Supreme Court held in *Stone v. Ritter* that the "fiduciary duty of loyalty is not limited to cases involving financial or cognizable fiduciary conflict of interest.  It also encompasses cases where the fiduciary fails to act in good faith."[87]  "Where directors fail to act in the face of a known duty to act, demonstrating a

---

[84] *Fedders N. Am. Inc.*, 405 B.R. at 540 (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).

[85] *Joyce v. Cuccia*, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997).

[86] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 564 (Bankr. D. Del. 2008) (quoting *Rales v. Balsband*, 634 A.2d 927, 936 (Del. 1993).

[87] *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith."[88]

The Trustee has failed to explain how Huston, Lindsley, McNeil, Ziegler and Humphrey lacked independence or were interested in the challenged transfers even if the Director Defendants intended from the outset that Infinidi Media would become its own separate company.   The Trustee has only alleged that one of the named Director Defendants, Kevin Doman, who held a 10% equity interest in USDigital, became a director of Infinidi Media after leaving employment at USDigital.   Huston, Lindsley, McNeil, Ziegler and Humphrey were not employed by Infinidi Media following its break from USDigitial.   The Complaint only asserts that after the Infinidi Media spin-off, McNeil, Ziegler and Humphrey were employed by NexGen, and that after ceasing to fund USDigital in December 2006, NexGen began funding Infinidi Media in January 2007.   Without more, these facts do not indicate that the Director Defendants were interested in the Infinidi Media Transfers while at USDigital.

The Trustee also alleges that the Director Defendants breached their duty of loyalty and good faith by failing to oversee and protect USDigital's resources and property.   The Delaware Court of Chancery considered a director's duty of oversight in *In re Caremark Int'l. Inc. Derivative Litig.*  The Court of Chancery held that directors had a duty "to attempt in good faith to assure that a corporate information and reporting

---

[88] *In re Bridgeport Holdings, Inc.*, 388 B.R. at 564; *Walt Disney Co. Deriv. Litig.*, 906 A.2d at 65-68 (finding that abdicating directorial duties is a breach of the duty to act in good faith, which is a permutation of the fiduciary's duty of loyalty).

system, which the board concludes is adequate, exists."[89]  The failure to enact such a system or the lack of good faith in the board's judgment of the adequacy of such a system, thus, can lead to liability.  To successfully plead a "Caremark" claim, plaintiffs must show that "(a) the directors utterly failed to implement any reporting or information system or controls; (b) or having implemented such a system or controls, [they] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."[90]

The Court grants dismissal of the claims for failure to oversee and protect USDigital's assets because the Complaint fails to plead facts indicating that USDigital lacked a reporting system or that the Director Defendants failed to adequately monitor the reporting system.  Indeed, there is no mention in the Complaint of a reporting system or the inadequacy of monitoring by the Director Defendants.

The Trustee charges that the Director Defendants breached their duty of loyalty and good faith to USDigital and its creditors by approaching the Indifini Media Transfers with a level of indifference or egregiousness that amounted to bad faith. Applying the holding in *Gheewalla* to the facts of this case, when USDigital was navigating in the "zone of insolvency," the Director Defendants owed their fiduciary duties to the corporation and its shareholders, not its creditors.[91]  Accordingly, the

---

[89] *In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).

[90] *Stone v. Ritter*, 911 A.2d at 370.

[91] *Gheewalla*, 930 A.2d at 101 ("When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge fiduciary duties to the

Director Defendants cannot have breached a fiduciary duty to USDigital and its creditors while operating in the "zone of insolvency" because they did not owe such a duty under Delaware law.  However, as *Gheewalla* makes clear, when USDigital became insolvent, the Director Defendants owed fiduciary duties to USDigital and its creditors.

The decision to spin-off a division of a corporation does not independently create liability for directors, nor does spending money on the division prior to its divesture independently give rise to liability.[92]  For example, the directors of a corporation comprised of two divisions could decide to spin-off a more profitable division leaving the original corporation with the less profitable division.  However, permitting Infinidi Media to be spun-off after USDigital was insolvent harmed the creditors of USDigital because, at that point, the creditors had legitimate claims on USDigital's assets including, but not limited, to Infinidi Media.

Once insolvent, the Director Defendants had a duty to the creditors of USDigital to consider their interests before deciding to spin-off Infinidi Media.  The Trustee has alleged facts indicating that $245,869.25 was spent on operating Infinidi Media prior to its divesture without any contractual obligations or indebtedness to USDigital.  USDigital filed for bankruptcy within three months of spinning off Infinidi Media.  The Trustee has asserted a plausible claim that the Director Defendants approved a

---

corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners.").

[92] *See generally Cede & Co. v. Technicolor*, 634 A.2d 345, 361 (Del. 1993) (finding that the business judgment rule creates a presumption in favor of a director-approved transaction, and that to rebut the presumption, the shareholder challenging a board decision must show that the directors breached the duty of good faith, loyalty, or due care).

transaction that was unfair to USDigital's creditors. The Trustee has also alleged sufficient facts indicating that the Director Defendants lacked good faith in their decision to spin-off Infinidi Media and without considering the effect the spin-off would have on the creditors of USDigital. Consequently, the Court denies the Motion to Dismiss Count IX.

### E. Count X – Claims of Aiding and Abetting against NexGen and Humphrey.

In Count X, the Trustee asserts claims for aiding and abetting the alleged breach of fiduciary duty asserted in Count IX against NexGen and Humphrey. NexGen and Humphrey argue that aiding and abetting claims in Count X should be dismissed because the Trustee failed to adequately plead the underlying breach of fiduciary claims and because the Trustee failed to plead any facts indicating NexGen or Humphrey knowingly participated in the alleged breaches.

Under Delaware law, a valid claim for aiding and abetting a breach of fiduciary duty has four requirements: (1) the existence of a fiduciary relationship; (2) proof that the fiduciary breached its duty; (3) proof that a defendant, who is not a fiduciary, knowingly participated in a breach; and, (4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary.[93] Knowing participation in a breach of fiduciary duty requires that the third party act with the

---

[93] *Cargill v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1125 (Del. Ch. 2008) (citing *Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *15 (Del Ch. Nov. 30, 2007).

knowledge that the conduct constitutes such a breach.[94]   Delaware courts have noted that a claim for aiding and abetting represents a context-specific application of civil conspiracy law.[95]

Drawing all reasonable inferences in favor of the Trustee, the Complaint sets out facts sufficiently plausible to sustain Count X with respect to NexGen.   The Trustee properly pled that the Director Defendants owed a fiduciary duty to USDigital and its creditors.   The Trustee demonstrated that the Director Defendants breached their fiduciary duties to USDigital and its creditors.

The Trustee has sufficiently pled facts indicating that defendants NexGen knowingly participated in the fiduciary duty breaches.  Specifically, the Trustee alleges that NexGen was the founder, major shareholder, and primary capital provider for USDigital prior to its bankruptcy filing.  In December 2006, NexGen completely ceased funding to USDigital and Infinidi Media was spun-off from USDigital.  Less than one month later, in January 2007, NexGen began funding Infinidi Media.  Therefore, the Trustee has alleged sufficient facts supporting an inference that NexGen played an active role in the Director Defendant's decision to spin-off Infinidi Media harming USDigital and its creditors.  In addition, the Trustee has shown that damages suffered by USDigital and its creditors were a result of the concerted action of the Director Defendants and NexGen.

---

[94] *Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001).

[95] *Weinberger v. Rio Grande Industries, Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) (stating that a claim for civil conspiracy involving breaches of fiduciary duty is sometimes called "aiding and abetting").

With regard to Humphrey, Humphrey was named as a Director Defendant alleged to have breached his fiduciary duties in Count IX.  He cannot have aided and abetted the same fiduciary duty he allegedly breached in a previous count.  The Court grants the Motion to Dismiss Count X as to Humphrey, but denies it as to NexGen.

### F.  Count XII – Claims of Corporate Waste and Mismanagement Against the Director Defendants.

In Count XII, the Trustee alleges that Director Defendants wasted the Debtor's resources by permitting the use of operating funds on the development of Infinidi Media without fair consideration.  The Director Defendants move to dismiss Count XII on the grounds the Trustee failed to state a claim, arguing that devoting resources toward the development of an internal sales division is not a waste of corporate assets.

The test for corporate waste is an "extreme test, very rarely satisfied by shareholder plaintiff."[96]  Waste has been described as "an exchange of corporate assets for consideration so disproportionally small as to lie beyond the range at which any reasonable person might be willing to trade.  Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose."[97]  "Directors are guilty of corporate waste, only when they authorize a transaction that is so one-sided that no business person of ordinary, sound judgment could conclude the corporation has received adequate consideration."[98]  A corporate waste claim "must rest on the facts

---

[96] *Weiss v. Swanson*, 948 A.2d 433, 452 (Del. Ch. Mar. 7, 2008) (quoting *Zupnick v. Goizueta*, 698 A.2d 384, 387 (Del. Ch. Jan. 21, 1997).

[97] *Weiss*, 948 A.2d, at 450 (citing *Brehm v. Eisner*, 746 A.2d 244, 263 (Del 2000)).

[98] *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993).

that show that the economics of a transaction were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation" in order to survive a motion to dismiss.[99]  "If under the facts pled in the complaint, 'any reasonable person might conclude that the deal made sense,' then the judicial inquiry ends.'"[100]

A reasonable person could conclude that investing operating funds to develop an internal sales division makes sense.[101]  However, investing operating funds in Infinidi Media without an accompanying arrangement for reimbursement *after* the Directors decided to spin it off may constitute corporate waste.[102]  At what point in time the Director Defendants decided to spin-off Infinidi Media remains a question of fact.  The Director Defendants committed corporate waste if the decision to spin-off Infinidi Media occurred before USDigital invested operating funds into it without a plan for reimbursement.  Accordingly, the Trustee has pled claims that are facially plausible and the motion to dismiss Count XII is denied.

### G. Count XIII – Claims of Unjust Enrichment Against McNeil, Ziegler, Humphrey, NexGen, Doman, and Infinidi Media.

In Count XIII, the Trustee set forth claims of unjust enrichment against McNeil, Ziegler, Humphrey, NexGen, Doman, and Infinidi Media, Inc (the "NexGen

---

[99] *Fedders N. Am. Inc.*, 405 B.R. at 549 (quoting *Harbor Fin. Partners V. Huzienga*, 751 A.2d 879, 893 (Del. Ch. 1999).

[100] *Harbor Fin. Partners*, 751 A.2d at 892 (quoting *Steiner v. Meyerson*, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

[101] *Harbor Fin. Partners*, 751 A.2d, at 892.

[102] *Id.*

Defendants"). Specifically, the Trustee alleges that the NexGen Defendants were unjustly enriched to the detriment of the creditors of USDigital. The NexGen Defendants move to dismiss Count XIII for failure to state a claim.

Unjust enrichment is "'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[103] The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of a justification and (5) the absence of a remedy provided by law.[104] Applying these principles to the facts alleged in the Complaint, the Court concludes that the Trustee has adequately alleged facts in support of its unjust enrichment claim to survive the Motion to Dismiss.

The Court is not persuaded by the NexGen's contention that NexGen was not enriched because the transfers were made from one internal division of USDigital to another division within the company. The NexGen Defendants misinterpret the Trustee's allegations. The Trustee asserts that the NexGen Defendants used the assets of the Debtor to start a new company, Infinidi Media, owned and operated by the NexGen Defendants to the detriment of USDigital and its creditors. In support of his allegations, the Trustee has alleged facts demonstrating that the NexGen Defendants held ownership interests in NexGen, worked for NexGen, or worked for Infinidi Media

---

[103] *MCG Capital Corp v. Maginn*, 2010 WL 1782271, at *24 (Del. Ch. May 5, 2010) (quoting *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999)).

[104] *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).

following the spin-off.  McNeil was the chairman and founder of NexGen.  Ziegler was

vice president of NexGen and on its board of directors.  Humphrey held the position of

general counsel at NexGen.  Doman became a director of Infinidi Media after leaving

USDigital.  The NexGen Defendants were enriched because after the divesture they

held interests in Infinidi Media; the creditors of USDigital were impoverished because

USDigital spun-off Infinidi Media depriving them of assets in which they held

legitimate claims.  The Plaintiff has alleged sufficient facts supporting a plausible claim

that the NexGen Defendants benefited by the spin-off of Infinidi Media to the loss of

USDigital and its creditors.  Consequently, the Motion to Dismiss Count XVI is denied.

### H.  Count XIV – Disallowance of Claims Against NexGen and Stonebridge

In Count XIV, the Trustee seeks the disallowance of claims filed by NexGen and

Stonebridge pursuant to 11 U.S.C. § 502(d).  Section 502(d) provides that the Court shall

disallow the claims of any entity from which property is recoverable under section 550

or from which a transfer or transfers are avoidable under 544, 547, or 548.  The Court

denies the Trustee's claims for disallowance because the Trustee's claims under sections

544, 547, 548 and 550 fail as a matter of law.

### I.  Count XV – Claims for Equitable Subordination of Security Interest and Claims

The Trustee seeks equitable subordination of NexGen's security interest and the

claims filed in the bankruptcy case by Huston, Lindlsey, McNeil, Ziegler, Humphrey,

NexGen, and Stonebridge.  The Complaint only refers to claims actually filed by

NexGen and Stonebridge and it is unclear whether the other Defendants even filed

37

claims.   The Court will limit its discussion of equitable subordination to those two claimants.   The Defendants move to dismiss Count XV for failing to allege specific facts supporting a claim for equitable subordination.

In the exercise of its jurisdiction as a court of equity, the bankruptcy court may subordinate claims for cause applying traditional principles of equitable subordination.[105]   Pursuant to 11 U.S.C. § 510(c), the bankruptcy court may subordinate an allowed claim, on equitable grounds, to the claims of other creditors of the debtor's estate.[106]   The essential purpose of equitable subordination is to undo any inequality in the claim of a creditor that will produce injustice or unfairness to other creditors in regards to the distribution of the estate.[107]

In the Third Circuit, before ordering equitable subordination, courts generally require the plaintiff to show three elements: (1) the claimant must have engaged in some type of inequitable conduct;[108] (2) the claimant's misconduct must have resulted in injury to other creditors or conferred an unfair advantage on the claimant; and (3)

---

[105] *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir. 2003) (citations omitted).

[106] Section 510(c) reads in relevant part:

"(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may – (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest or part of another allowed interest."

[107] *Burden v. United States* (*In re Burden*), 917 F.2d 115, 120 (3d Cir. 1990) (citing *In re Westgate-California Corporation*, 642 F.2d 1174, 1177 (9th Cir. 1981)).

[108] However, Judge Ambro, writing for the Third Circuit in *In re Submicron Systems Corp*, noted that the Court has "declined to adopt the first generally recognized formal requirement for equitable subordination." The Third Circuit stated in *In re Burden* that "creditor misconduct is not [always] a prerequisite to equitable subordination." *Burden*, 917 F.2d at 120.   Whether there was creditor misconduct is not an issue in this case.

equitable subordination of the claim must not be inconsistent with the Bankruptcy Code.[109]   Three principles must be considered in determining whether these three conditions are satisfied.  First, the inequitable conduct directed against the bankruptcy or its creditors may be sufficient to warrant subordination of a claim regardless of whether it was related to the assertion of that claim.[110]  Second, a claim or claims should be subordinated only to the extent necessary to offset the harm which the creditors suffered on account of the inequitable conduct.[111]   Third, a party seeking equitable subordination has the initial burden of proof.[112]

Rule 3001(f) of the Federal Rules of Bankruptcy Procedure creates a presumption in favor of the validity of a claimant's proof of claim.[113]  Claims asserted by insiders,[114] however, demand closer scrutiny.[115]  Indeed, courts have found that the most important factor in the determination of whether inequitable conduct occurred for the purposes of equitable subordination is whether or not the claimant was an insider at the time of the

---

[109] *In re Submicron Systems Corp.*, 432 F.3d 448, 462 (3d Cir. 2006); *Citicorp Venture Capital Corp. v. Committee of Creditors v. Unsecured Claims*, 160 F.3d 982, 989 (3d Cir. 1998); *In re Midway Games Inc.*, 428 B.R. 303, 322 (Bankr. D. Del. 2010); *In re Mid-Am. Waste Sys.*, 284 B.R. 53, 70 (Bankr. D. Del. 2002).

[110] *In re Mid-Am. Waste Sys*, 284 B.R. at 69 (citing *Benjamin v. Diamond* (*In the Matter of Mobile Steel*), 563 F.2d 692, 699 (5th Cir. 1977)).

[111] *Id*.

[112] *Id*.

[113] Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

[114] Section 101(31) of the Bankruptcy Code provides that an insider includes: (B) if the debtor is a corporation – (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor.

[115] *In re Mid-Am. Waste Sys*, 284 B.R. at 69.

act.[116]    Generally, courts have recognized three categories of misconduct which may constitute inequitable conduct for insiders: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego.[117]    "To qualify as inequitable conduct, the insider or fiduciary creditor must have actually used its power to control the debtor or its position of trust with the debtor to its own advantage or the other creditors' detriment."[118]

It is uncontested that NexGen and Stonbridge constitute insiders under section 101(31) of the Bankruptcy Code.  NexGen was USDigital's primary source of funding and McNeil, its founder, was also the board of directors at USDigital as was Ziegler who served as vice president at USDigital.  NexGen's general counsel acted as legal counsel for USDigital at the same time.  Stonebridge was founded by Huston who is also its managing member and majority owner.  Huston was a founder of USDigital and its president prior to the bankruptcy filing.

The Trustee contends that NexGen and Stonebridge engaged in inequitable conduct that preferred themselves to the harm and detriment of other creditors. Specifically, the Trustee contends NexGen's claims should be subordinated because through its domination and control, NexGen compelled the debtor to invest money in Infinidi Media and to grant the lien in the set top boxes.  Similarly, the Trustee contends

---

[116] *Id*; (citing *Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust* (*In re 604 Columbus Ave. Realty Trust*), 968 F.2d 1332, 1360 (1st Cir. 1992)).

[117] *Citicorp Venture Capital, Ltd. v. Comm. Of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-7 (3d. Cir. 1998).

[118] *In re Mid-Am. Waste Sys.*, 284 B.R. at 69 (citing *Citicorp*, 160 F.3d at 987).

that through its domination and control, Stonebridge compelled the debtor to transfer $20,000 to itself over the course of five months.

The Court find that the facts alleged in the Complaint are sufficient to show that the Trustee has stated a plausible claim for equitable subordination against NexGen and Stonebridge.  NexGen and Stonebridge had an advantage over other creditors because of their insider access to USDigital's financial condition.  In addition, the Trustee has properly pled that the Infinidi Media Transfers and the Stonebridge Transfers resulted in other creditors of the estate receiving less and that equitable subordination is consistent with other sections of the Bankruptcy Code.  Accordingly, as to the claims of NexGen and Stonebridge, the Motion to Dismiss Count XV is denied.

### J.  Count XVI – Claims for an Accounting

In Count XVI, the Trustee demands an accounting with supporting documentation of all the transactions relating to the Infinidi Media Transfers.  The Court finds that having determined a fiduciary duty to the creditors existed, it would be inappropriate to dismiss the Trustee's accounting claim.  "Under Delaware law, a claim for accounting is an equitable remedy tied to fiduciary duties."[119]  As it is a remedy, should the Trustee ultimately be successful on its claims for breach of fiduciary duty of loyalty owed to USDigital and its creditors, this Court will address its arguments for granting an accounting.[120]  Consistent with this Court's ruling that the Trustee has

---

[119] *In re Stone & Webster, Inc.*, 2009 WL 426118, at *5 (Bankr. D. Del. Feb. 18, 2009) (citing *Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005).

[120] *Id.*

sufficiently pled a plausible claim for fiduciary duty as to USDigital and its creditors, the Court likewise will not dismiss Count XVI.

### K. Count XVII – Claims for Recharacterization and Disgorgement of Secured and Unsecured Promissory Notes from Debt to Equity

In Count XVII, the Trustee seeks a recharacterization and disgorgement of the NexGen Secured Promissory Note in the amount of $100,000 and NexGen Unsecured Promissory Note in the amount of $100,000.  The Trustee contends that the Promissory Notes actually were capital contributions and should be rechracterized as equity because NexGen contributed the money when the Debtor was insolvent and when repayment was unlikely.  NexGen asserts that Count XVII should be dismissed because the Trustee has failed to allege sufficient facts to support a claim that the Promissory Notes should be recharacterized as equity.

Bankruptcy courts have long been recognized as courts of equity.[121]  Writing for the Supreme Court in *Pepper v. Litton*, Justice Douglas stated that these equitable powers permit the bankruptcy court to produce fair and just results "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent justice from being done."[122]  The ability to recharacterize a purported loan derives from the bankruptcy court's equitable power to ignore the form of a transaction and give effect to its substance.[123]

---

[121] S*ee Local Loan Co. v. Hunt*, 292 U.S. 234 (1934).

[122] *Pepper v. Litton*, 308 U.S. 295, 305 (1939).

[123] *In re Fabricators, Inc.*, 926 F.2d 1458, 1469 (5th Cir. 1991).

In determining whether debt is more aptly characterized as equity, the court's overarching inquiry is to discern whether the "parties called an instrument one thing when in fact they intended it as something else."[124]   The inquiry is one of intent at the time of the transaction and "[t]hat intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances."[125]   To aid in the search for the parties' intent, courts have developed multi-factor tests borrowed from non-bankruptcy case law.   Courts in the Third Circuit have applied a seven-factor test.[126]   The factors are: (1) the name given to the instrument; (2) the intent of the parties; (3) the presence or absence of a fixed maturity date; (4) the right to enforce payment of a principal and interest; (5) the presence or absence of voting rights; (6) the status of the contribution in relation to regular corporate contributors; and (7) certainty of payment in the event of the corporation's insolvency or liquidation.[127]

Here, the original parties to the Promissory Notes were NexGen and USDTV. The Complaint provides that on June 13, 2006, and on June 29, 2006, NexGen and USDTV entered into the "Original USDTV Promissory Notes," which were later assumed by USDigital as part of the court-approved sale of USDTV's assets to USDigital.   Because the Promissory Notes were assumed by USDigital as part of a

---

[124] *In re Submicron Systems Corp.*, 432 F.3d 448, 456 (3d Cir. 2006).

[125] *Id.*

[126] *In re Submicron Systems Corp.*, 291 B.R. 314, 323 (D. Del. 2003) *aff'd*, 432 F.3d 448 (3d Cir. 2006); *In re Color Tile, Inc.*, 2000 WL 152129, *4 (D. Del. Feb. 9, 2000) (unpublished).

[127] *Id.*

court-approved sale, Trustee's argument that NexGen "knew, reasonably should have known, that the Debtor was in precarious financial circumstances…and was unlikely to generate sufficient liquidity to repay their loan" at best is unclear and at worst detracts from the Trustee's argument.[128]  The Court finds it difficult to understand how NexGen could have intended this as a capital contribution to USDigital if the debt itself was assumed out of a sale in an altogether different bankruptcy case.

Nevertheless, even if the facts were clearer that NexGen knowingly entered into an independent loan arrangement with USDigital, the Trustee fails to allege adequate facts to support a claim for recharacterization under the plausibility standard of *Iqbal*.[129] The Trustee has not set forth any facts indicating an intention of the parties that the NexGen Promissory Notes were to be capital contributions and not Promissory notes. It is insufficient for the Trustee to merely allege that the loans were made when USDigital was undercapitalized or in precarious financial circumstances when the Promissory Notes were entered into at the time USDigital purchased assets out of the USDTV bankruptcy.  The Court finds that Count XVII constitutes a "blanket assertion" and the Trustee has failed to state the ground on which a valid claim rests.  The Motion to Dismiss Count XVII is granted.

---

[128] Complaint, ¶ 258

[129] *Iqbal*, 129 S.Ct. at 1937.

## L.  Motion by the Defendants for a More Definite Statement

The Defendants request the Court require the Trustee to provide a more definite statement of the claims in the Complaint.  Federal Rule of Civil Procedure 12(e) applies here pursuant to Federal Rule of Bankruptcy Procedure 7012(b).  Rule 12(e) permits defendants to move for a more definite statement of a complaint that is "so vague or unambiguous that the party cannot reasonably prepare a response."[130]

Motions for a more definite statement are not favored.[131]  The class of pleadings sufficiently ambiguous as to merit the granting of a Rule 12(e) motion is small.[132]  Only in the rare case that a complaint is extremely vague and ambiguous that a party cannot reasonable be required frame a responsive pleading are Rule 12(e) motions granted.[133]  It is true that civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.[134]  Pleadings are not, however, a substitute for discovery.[135]  Unintelligibility of the complaint, not its lack of detail, forms the basis for granting a motion for more definite statement under Rule 12(e).[136]

The defendants assert that the Complaint lacks sufficient detail to formulate a response.  Specifically, the defendants assert that in Count IX (breach of fiduciary duty)

---

[130] Fed. R. Civ. P. 12(e).

[131] *In re APF Co.*, 274 B.R. 408, 425 (Bankr. D. Del. 2001).

[132] *Id.*

[133] *Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).

[134] *Fowler*, 578 F.3d at 210.

[135] *In re APF Co.*, 274 B.R. at 425 (citing *Betancourt v. Marine Cargo Mgmt.*, 930 F.Supp. 606, 608 (S.D.Fla 1996)).

[136] *In re APF Co.*, 274 B.R. at 425 (citing *In re American Intern. Airways, Inc.*, 66 B.R. 642, 645 (Bankr. E.D.Pa. 1986)).

and Count XIII (unjust enrichment) the Complaint fails to specify what "business opportunity/concept, intellectual property rights, all work product, and all software and hardware" was allegedly taken from USDigital to Infinidi Media.[137]  The Trustee contends that a more definite statement is not warranted because the claims are not unintelligible.

While the Court agrees with the defendants that the Complaint is unclear at times, the lack of clarity does not approach that of unintelligibility required to grant a Rule 12(e) motion.    The Court finds that Count IX and XIII are not unintelligible. Moreover, Counts IX and XIII are not sufficiently vague and ambiguous that the defendants could not reasonably be required to form a response.[138]  Consequently, the motion to grant a more definite statement is denied.

<u>CONCLUSION</u>

For the forgoing reasons, the defendants' Motion to Dismiss will be granted in part and denied in part.  Specifically, the Motion to Dismiss will be granted with respect to counts I-IV, denied with respect to counts IX, X, XII and XIII, provided, however, that the Court will grant Humphrey's Motion to Dismiss count XI, granted with respect to XIV, denied with respect to counts XV and XVI, and granted with respect to XVII.  The motion for a more definite statement will be denied.

---

[137] Motion to Dismiss, P. 27.

[138] *Schaedler*, 370 F.2d at 798.